IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA  :
                          :  CRIMINAL ACTION
                          :
            v.            :  NO. 07-549-01
                          :
                          :
MAURICE PHILLIPS          :
                          :

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                              **July 23, 2013**

The forfeiture of the property belonging to Defendant Maurice Phillips is once again before the Court. At hand is the resolution of Defendant's Emergency Motion to Stay Enforcement of the Court's Preliminary Order of Forfeiture For Substitute Asset. For the reasons set forth below, the motion shall be DENIED.

**Factual Background**

Defendant, Maurice Phillips, was charged and convicted in this matter for his role as founder, organizer, and leader of the Phillips Cocaine Organization (hereinafter "PCO"). The charges against Mr. Phillips included: (1) conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846; (2) engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848; (3) conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); (4) two counts of concealment of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); (5) conspiracy to use interstate commerce facilities in the

commission of murder for hire in violation of 18 U.S.C. § 1958; (6) use of interstate commerce facilities in the commission of murder for hire in violation of 18 U.S.C. § 1958; and (7) murder, tampering with a witness, victim, or an informant in violation of 18 U.S.C. §§ 1111(a), 1512 (a)(1)(c). Defendant's role in PCO, a multimillion dollar cocaine distribution organization, which spanned the eastern seaboard of the United States, lasted from 1998 through 2007. The $31,000,000 estimated value of the cocaine distributed was used towards acquiring and maintaining a lavish lifestyle - including new homes and automobiles, attaining additional businesses, paying the legal fees for criminally charged PCO employees, and engendering loyalty among PCO employees and associates.

PCO's prominence as a cocaine distributor was not achieved in isolation; PCO was dependent upon conspiracies with other illicit organizations. Particularly, PCO conspired with, among others, Chineta Glanville, a professional money launderer to conceal the drug proceeds, and the Alvear Cocaine Supply Organization, a cocaine supply organization based in Texas which arranged for the receipt of the substance from Mexico. However, the conspiracies extended beyond the day-to-day operational logistics of the business. Ultimately, Mr. Phillips was convicted of aiding and abetting the murder of Chineta Glanville to prevent her from cooperating with law enforcement authorities in their

investigation into Defendant's businesses.

In light of these actions, in addition to his concurrent life sentences, the grand jury found that probable cause existed to support a Notice of Forfeiture. Pursuant to 18 U.S.C. § 982 and 21 U.S.C. § 853, respectively, this Notice required Defendant to forfeit "any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of," and any "property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of" the offenses for which he was convicted. The property to be forfeited was equal to at least $31,000,000 - the wholesale value of the cocaine acquired by and sold through PCO. Following this order of forfeiture, Mr. Phillips appealed his conviction.

Although not originally included in the Notice of Forfeiture, the Government moved to include certain real property located at 45 Cedar Avenue in Newark, New Jersey,[1] under 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2(e). The property was added in partial satisfaction of the remaining debt of the forfeiture money judgment entered against Defendant. Defendant has since moved to stay enforcement of the Order of Forfeiture for Substitute Asset pending his criminal appeal.

---

[1] Although the record owner of this property is Ahom, Inc., this is a corporation that is "solely owned, was operated by, and is under the control of Phillips." (Government's Response to Defendant's Motion to Stay Enforcement of Preliminary Order of Forfeiture for Substitute Asset, p. 4-5). In addition, "[t]he government also determined that Phillips continues to exercise control over and collect rental income from this property." (Id.)

**Discussion**

Under Fed. R. Crim. P. 32.2, a stay of forfeiture may be granted pending an appeal of conviction or an order of forfeiture. Specifically, that Rule states, in relevant part: "If a defendant appeals from a conviction or an order of forfeiture, the court may stay the order of forfeiture on terms appropriate to ensure that the property remains available pending appellate review." Fed. R. Crim. P. 32.2(d). In order to sustain a motion for a stay pending an appeal, the movant must have made a strong showing that: (1) his appeal is likely to succeed on the merits; (2) the applicant will be irreparably injured absent a stay; (3) the issuance of the stay will not substantially injure the other parties interested in the proceeding; and (4) that the public interest lies in favor of the movant. Hilton v. Braunskill, 481 U.S. 770, 776 (1987). Although each factor is crucial to the Court's analysis and decision, "no one aspect will necessarily determine its outcome." Constructors Ass'n of W. Pa. v. Kreps, 573 F.2d 811, 815 (3d Cir. 1978). We turn now to an analysis of each of the foregoing factors.

I. Likelihood of Success on Appeal

We first find that Mr. Phillips' motion to stay the order of forfeiture fails as his criminal appeal is not likely to be successful. See, e.g., Hilton, 481 U.S. at 776. In his motion to stay the forfeiture of his property, Mr. Phillips claims that he

will be successful on appeal due in part to the fact that he received ineffective assistance of counsel. (Defendant's Emergency Motion to Stay Enforcement of District Court's "Preliminary Order of Forfeiture for Substitute Asset," p. 3). "The benchmark for judging any claim of ineffectiveness must be whether *counsel's* conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984) (emphasis added). However, in his direct appeal of his criminal case, Defendant discusses only the conduct of the prosecutor, not his defense attorney. Given that it was not counsel's conduct, but rather the prosecutor's that is at issue, we surmise that Mr. Phillips' claim of ineffective assistance of counsel was actually meant to address prosecutorial misconduct. Under this presumption, we turn now to Mr. Phillips' argument.

To sustain a claim of prosecutorial misconduct, a reviewing court must "examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct[,]" and its effects. Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001). If the conduct of the prosecutor "infected the trial with unfairness as to make the resulting conviction a denial of due process[,]" the court may overturn a conviction. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).

Mr. Phillips claims that the prosecutorial misconduct amounts to two *Brady* violations, and thus infringes on his right to Due Process. Brady v. Maryland, 373 U.S. 83, 87 (1963). A claim alleging a *Brady* violation must demonstrate: (1) that evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment. United States v. Higgs, 713 F.2d 39, 42 (3d Cir. 1983).

In the case at hand, Mr. Phillips argues that the prosecution withheld evidence regarding the criminal history and patterns of two witnesses against him, that this withheld evidence was favorable to the defense, and that if the evidence had been presented, the witnesses testifying against him would have been discredited and he would not have been convicted. These alleged circumstances would qualify as a *Brady* violation under the requirements, and as held in Mooney, a Due Process violation. Mooney v. Holohan, 294 U.S. 103, 112 (1935). However, if the withheld evidence does not qualify as material under Brady, the fact that it was withheld does not amount to infringement of Due Process. Brady, 373 U.S. at 87.

Mr. Phillips presents two bases for his claim of ineffective assistance of counsel, now modified to prosecutorial misconduct. First, Mr. Phillips claims that the Government was aware of discrediting information regarding Bryant Phillips, a key witness

-6-

who was testifying against Defendant, but failed to disclose this information to the defense. (Defendant's Direct Appeal of Criminal Case, p. 18). Bryant Phillips testified that he was hired by Defendant to carry out the murder of Chineta Glanville in order to prevent her from testifying against Maurice Phillips. Defendant alleges prosecutorial misconduct due to the fact that the Government failed to disclose its discovery that Bryant, while working as a cooperating witness with the Government, initiated a new, separate drug conspiracy while incarcerated. Id. Despite noncompliance with the terms of his agreement with the Government, the Government portrayed Bryant Phillips as a trustworthy witness. Id. at 19.

Second, Mr. Phillips claims that the Government had discrediting evidence regarding another key witness, Lamont Smith, but also failed to reveal such evidence to the defense. Mr. Smith was testifying against Mr. Phillips on all drug-related counts. Despite having knowledge, the Government withheld information regarding Smith's history and pattern of home invasions, which markedly resemble the crime scene from Chineta Glanville's murder. Moreover, when the defense asked the witness to disclose his criminal history, the Government objected to the question, allegedly for the purpose of concealing this information, which was sustained by the Court. Defendant contends that had the Government disclosed this information, the Court

-7-

would not have sustained the objection, and the evidence discrediting Mr. Smith as a key witness would have been exposed.

Mr. Phillips claims that the conduct regarding both witnesses, specifically, the Government's failure to disclose such discrediting evidence to the defense, amounts to prosecutorial misconduct and a *Brady* violation as well. As a result, Defendant believes that he will likely be successful on appeal. In advancing this argument, Mr. Phillips presumes that this impeachment evidence was "material either to guilt or punishment," as required under Brady. 373 U.S. at 87. Evidence is material if, had it been presented, there is a reasonable probability that the result of the proceeding would have been different. United States v. Bagley, 473 U.S. 667, 682 (1985).

In assessing the allegedly withheld evidence in this case, however, we find that it fails to meet this materiality standard. Although the witnesses were influential in the sense that their testimony made Defendant's conviction more likely than if they had not testified, this does not guarantee that the result of the trial would have been different if the withheld evidence had been disclosed. Strickler v. Greene, 527 U.S. 263, 289 (1999). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley,

514 U.S. 419, 435 (1995). While attention to the discrediting evidence could possibly sway the jury, Mr. Phillips has not demonstrated that it would "probably change" the outcome of the case. Since Defendant cannot prove that the withheld evidence would have altered the result of his trial, he can likewise neither prove a *Brady* violation nor infringement of Due Process. Furthermore, Mr. Phillips' claim of prosecutorial misconduct does not prevail, as he cannot show that the withheld evidence rendered the trial so unfair as to violate his Due Process rights. As such, we find that Mr. Phillips is unable to demonstrate his likelihood of success on appeal on the basis of prosecutorial misconduct.

In his motion, Defendant also claims that his right to Due Process was violated under the Fifth Amendment and that the Order of Forfeiture imposed amounts to cruel and unusual punishment under the Eighth Amendment. Specifically, Mr. Phillips suggests that the alleged *Brady* violations resulting from the prosecutorial misconduct violate his right to Due Process. Mooney, 294 U.S. at 112. However, as discussed above, the impeachment evidence does not qualify as material so as to constitute a *Brady* violation, and it therefore is not a Due Process violation. In addition, Defendant failed to raise an Eighth Amendment violation claim in his direct appeal, and this failure also precludes its consideration here.

## II. <u>Irreparable Injury to Movant Absent the Stay</u>

To support a motion to stay enforcement of forfeiture, the movant must demonstrate that he or she would suffer irreparable injury if the stay were not granted. Hilton, 481 U.S. at 776. Defendant currently has no access to the real property in question and would not have such access even if the stay were granted pending his appeal. As such, failure to grant the stay would result in no significant loss to, or restraint on, the liberty of Defendant such that would amount to irreparable harm or injury. <u>Ozoroski v. Klem</u>, Civ.A. 04-561, 2004 WL 1446046, at *19 (E.D. Pa. June 28, 2004).

Defendant also claims that forfeiture of this property prior to the adjudication of his appeal would cause significant injury, as he believes the value of the property would increase over time. While this may be the case, the financial market is still in flux and the value of Mr. Phillips' property may very well decline in value. The status of the community, coupled with the instability of the economy, preclude a finding that the value of Mr. Phillips' property will, more likely than not, appreciate over time. Furthermore, forfeiture of the property is justified as it would merely take away a token of Defendant's immoral behavior that was unjustly gained, rather than actually depriving him of an honest possession. As such, Mr. Phillips fails to

persuade the Court that denying the stay would result in irreparable harm to himself.

   III.   <u>Absence of Injury to Interested Parties Given the Stay</u>

On the other hand, granting Mr. Phillips' motion to stay enforcement of the forfeiture would cause substantial harm to the Government. A decision whether to grant a stay must consider the harm, if any, that would result to interested parties if the stay were granted. <u>Hilton</u>, 481 U.S. at 776. While Mr. Phillips does not address this, the potential for the property's value to depreciate over time would clearly result in harm to the Government. Given that the purpose of including Mr. Phillips' Cedar Avenue property as a substitute asset was to help offset the remaining debt of the $31,000,000 money judgment, the value of the property is crucial.

In addition, allowing Mr. Phillips to retain the property could result in a complete loss of the property, in violation of Fed. R. Crim. P. 32.2(d). Specifically, that Rule states, in relevant part: "[T]he court may stay the order of forfeiture on terms appropriate to ensure that the property remains available pending appellate review." Fed. R. Crim. P. 32.2. However, if the stay is granted, Defendant is given the opportunity to transfer the property. If he does, and the transferee can demonstrate that "he is a bona fide purchaser...who at the time of purchase was reasonably without cause to believe that the property was subject

to forfeiture[,]" then the Government is unable to take possession of the property and use the value to help satisfy Mr. Phillips' money judgment. 21 U.S.C. § 853(b). Therefore, granting the stay and facilitating this potential for loss would defeat the purpose of including the property in the forfeiture proceedings and militates against granting Defendant's motion to stay.

## IV. The Public Interest

Defendant's interest in delaying the forfeiture of his property is unjustified given that the public's interests weigh against Defendant's motion. The analysis to determine whether to grant a stay must consider the public's interest with respect to the motion. Hilton, 481 U.S. at 776. When the Government is the opposing party to a motion to stay, as is the case here, the third and fourth factors of the test (harm to the opposing party and the public interest, respectively) merge. Nken v. Holder, 556 U.S. 418, 420 (2009). As discussed above, Defendant's motion to stay the order of forfeiture of the property located at 45 Cedar Avenue would harm the Government. Under the rule provided by Nken, the injury imposed thus dictates that the public interest weighs in favor of the Government. Id. In addition to the harm the stay would impose, this conclusion is further supported given the public's substantial interest in ridding society of drugs and its attendant circumstances. Permitting Mr. Phillips to retain a

memento and product of his unjust behavior would obviously send the wrong message to society. Indeed, allowing Mr. Phillips to keep his ill-gotten gains would not be punishment at all. Given that Defendant's motion to stay enforcement conflicts with the public's interests, which is supported by satisfying the third factor (harm to opposing party) under <u>Nken</u>, Defendant's motion should be denied. <u>Id.</u>

### **<u>Conclusion</u>**

For all of the foregoing reasons, Defendant, Maurice Phillips' Motion to Stay Enforcement of the Court's Preliminary Order of Forfeiture of Substitute Asset (Doc. No. 964) is DENIED.

An order follows.