IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| vs. : | |
| : | NO. 07-CR-549-1 |
| MAURICE PHILLIPS : | |

## MEMORANDUM AND ORDER

**JOYNER, J.**                                                        **June  8, 2021**

This case is once more before this Court for adjudication of Defendant's pro se Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) seeking compassionate release.  As shall be explained in the paragraphs which follow, the Motion will be denied.

### Factual Background

Defendant, Maurice Phillips, is a former "drug lord," who was the chief organizer and operating officer of an organization known as the Phillips Cocaine Organization or ("PCO").  The PCO operated primarily in the metropolitan areas of Philadelphia, Newark, New Jersey, New York, Washington, D.C., Virginia, and Maryland from approximately 1998 until Defendant's arrest in 2007.  In the course of his operation of the PCO, Maurice Phillips sold and/or distributed thousands of kilos of cocaine

worth tens of millions of dollars, making himself a multi-millionaire in the process.

As a result of the huge sums of money which Defendant acquired in the course of his illegal drug business, he found himself in need of the services of a professional money-launderer and he found one in the person of one Chinetta Glanville, a resident of Montgomery County, Pennsylvania. Phillips used Ms. Glanville's services for several years over the course of which she created a number of shell corporations and businesses, bank accounts and fake identification, employment documents and income tax records.  In this manner, Glanville facilitated Phillips' purchase of a number of properties, businesses, and vehicles, including at least one apartment building, trash trucks for a trash hauling business and a high-end clothing boutique in the area of Atlanta, GA. Defendant also enjoyed a lavish lifestyle throughout this time, spending vast sums of money in hosting large parties and weddings, travelling and renting box seats at sporting events, among other activities.

In or around May 2002, agents served search warrants on the homes of Glanville and two other of Defendant's associates, in the course of which they uncovered and seized, among other things, computers, business records, some $61,000 in cash, and falsified income tax returns prepared by Glanville.  Glanville

immediately began cooperating with law enforcement authorities. When Defendant learned of Glanville's cooperation, he began planning to have her murdered in order to silence her. Defendant subsequently made an agreement with his cousin to kill Glanville in exchange for $18,000. This agreement was thereafter fulfilled on June 25, 2002 when, using a Federal Express uniform and firearm provided by Defendant, Glanville and her adult godson, Dane King, were murdered in Glanville's home by Defendant's cousin. It wasn't until several years later – in or around late 2006 – early 2007 while incarcerated for another offense, that Defendant's cousin informed law enforcement of the role that he had played in the Glanville/King murders at Defendant's behest, eventually entering into a negotiated agreement with authorities to plead guilty to the murders and to give testimony about Defendant.

Maurice Phillips was charged on September 12, 2007, together with ten others, in a multi-count grand jury indictment[1] with, *inter alia*, murder and tampering with a witness, victim, or informant in violation of 18 U.S.C. §§ 1111(a), 1512(a)(1)(C), (a)(3)(A) and aiding and abetting the same in violation of 18 U.S.C. § 2; use of interstate commerce

---

[1] A superceding indictment was filed on January 23, 2008 adding two more defendants. Eventually, all but two of Phillips' co-defendants pled guilty to the charges against them and several testified on behalf of the Government at trial.

facilities in commission of a murder for hire, (18 U.S.C. §1958); concealment of and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (h) and aiding and abetting; engaging in a criminal enterprise in violation of 21 U.S.C. § 848(b) and (c); and conspiracy to distribute more than 5 kilograms of cocaine under 21 U.S.C. § 846. He was arrested the following day and held without bail pending trial which did not commence until January 3, 2010. Following a four-month long jury trial, Mr. Phillips was convicted of all of the multiple counts against him on April 14, 2010.

Because the Government was seeking the death penalty against Phillips, the penalty phase of the trial commenced on April 19, 2010. It lasted for more than a week, concluding on April 28, 2010, when the jury determined to spare Defendant's life and found that he instead should be sentenced to multiple terms of life imprisonment without the possibility of release. Defendant was formally sentenced on August 11, 2010 to life imprisonment on Counts 1 and 2, to 240 months' imprisonment on Counts 4, 5 and 6, to run concurrently to the sentences on Counts 1 and 2, and to life imprisonment on Counts 13, 14 and 15, to run consecutively to all other counts on which he was convicted, and to a 10-year period of supervised release. Defendant was also ordered to pay a fine of $50,000 and an $800 special assessment. On appeal, the Third Circuit determined

that, while the Court had erred in failing to give the jury a unanimity instruction on the Continuing Criminal Enterprise charge, it would be in the interests of judicial economy and efficiency to dismiss the conviction on that offense and the remainder of the judgments of conviction and sentences were affirmed.  See, United States v. Phillips, No. 10-3706, 589 Fed. Appx. 64, 2014 U.S. App. LEXIS 19795 (3d Cir. Oct. 16, 2014).  Although Defendant filed a petition for writ of certiorari to the U.S. Supreme Court, that petition was denied on June 29, 2015.  United States v. Phillips, 576 U.S. 1064, 134 S. Ct. 2911, 192 L. Ed.2d 941 (2015).

On March 15, 2021, Defendant filed the motion which is now before the Court seeking immediate release from custody pursuant to 18 U.S.C. § 3582(c)(1)(A), and arguing as the grounds therefor that the various health conditions from which he now suffers render him especially vulnerable to serious illness and/or death from COVID-19.  Specifically, Defendant avers that he suffers from hypertension, elevated cholesterol, pre-diabetes, obesity, glaucoma, nerve damage and chronic arthritis, which conditions have been found to put patients who suffer from them at high risk for adverse outcomes from COVID.  Defendant also asserts that he is now remorseful for the crimes which he committed and that he has spent the period of his incarceration in bettering himself through taking multiple courses on a wide

5

variety of topics and that he provides assistance to other inmates through, *inter alia*, participation in the suicide watch prevention program and as a law clerk.  If granted early release, he avers that the court could be assured that he would pose no threat to community safety as he would reside with his wife and their children in a stable home, he is highly motivated to remain compliant with the law so that he is never again separated from his family, and that he remains subject to a 10-year period of supervision under the terms of his original sentence.

### Legal Principles Governing Compassionate Release Motions

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" Dillon v. United States, 560 U.S. 817, 819, 130 S. Ct. 2683, 2687, 177 L. Ed.2d 271 (2010)(quoting 18 U.S.C. § 3582(c)).  Despite this general admonition, Congress has carved out a number of very limited exceptions, such as exists for example "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." Id, (quoting § 3582(c)(2)).  More recently, under Section 603(b) of the First Step Act of 2018, Pub. L. No. 115 P.L. 391, 132 Stat. 5194 (2018), one of these exceptions, allowing for the so-called compassionate release of inmates, was expanded to enable the inmates themselves to apply

6

directly to the district courts for a reduction of sentence.[2]

Now, under § 3582(c)(1)(A) of Title 18 of the U.S. Code:

 (1) in any case –

   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –

     (i) Extraordinary and compelling reasons warrant such a reduction; or

     (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

---

[2] See, e.g., United States v. Bayron, Crim. A. No. 95-338-01, 2021 U.S. Dist. LEXIS 29846 *4, 2021 WL 632677 *2 (E.D. Pa. Feb. 18, 2021)(citing United States v. Rodriguez, 451 F. Supp.3d 392, 395 (E.D. Pa. 2020))("Prior to 2018, courts could only grant an inmate compassionate release from incarceration pursuant to 18 U.S.C. Section 3582(c)(1)(A) upon a motion filed by the Director of the Bureau of Prisons (BOP)"). See also, United States v. Georgiou, Crim. A. No. 09-088, 2021 U.S. Dist. LEXIS 55245 at *10, 2021 WL 1122630 (E.D. Pa. Mar. 23, 2021)("On December 21, 2018, the First Step Act ("FSA") amended 18 U.S.C. § 3582(c)(1)(A) to add a provision that allows a defendant to move to a district court for a reduction in sentence, i.e. petition the court for compassionate release after exhausting the BOP's administrative process").

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; …

As the preceding dictates, consideration of the following factors articulated in 18 U.S.C. § 3553(a) must be given:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

(A) the applicable category of offenses committed by the applicable category of defendant as set forth in the guidelines … or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code … ;

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28 United States Code … in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. Section § 3553(a)(1) – (7).

The applicable policy statement for "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" is found in Section 1B1.13 of the U.S. Sentencing Guidelines[3] and provides:

> Upon motion of the Director of Prisons under 18 U.S.C. §3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. §3553(a), to the extent that they are applicable, the court determines that –

---

[3] As we have previously observed in our recent compassionate release decisions in United States v. Limehouse, Crim. A. No. 08-CR-0223-1, 2021 U.S. Dist. LEXIS 70730, 2021 WL 1387756 (E.D. Pa. Apr. 9, 2021) and United States v. Cooper, Crim. A. No. 01-512-05, 2021 U.S. Dist. LEXIS 79894 (E.D. Pa. Apr. 27, 2021), the policy statement referenced above has not been updated in response to the 2018 Act and thus there is not a policy statement from the Sentencing Commission applicable to motions for compassionate release filed directly by defendants/inmates themselves. See, e.g., Bayron, 2021 U.S. Dist. LEXIS at *5 – *6. We again here reiterate our agreement with Judges Brody and Schiller, two of our colleagues in this District, and the Court of Appeals for the Second Circuit, among others, that while the Sentencing Commission's outdated policy statement provides helpful guidance for a Court's assessment of extraordinary and compelling reasons for release, it does not preclude us from considering other reasons which a defendant might raise on a motion for compassionate release which are not specifically contemplated in the policy statement. See, Cooper, 2021 U.S. Dist. LEXIS at *7, n.1 (citing Bayron, 2021 U.S. Dist. LEXIS at *8 and United States v. Rodriguez, 451 F. Supp. 3d 392, 395-400 (E.D. Pa. 2020)). See Also, United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020)(holding that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D) nor anything else in the now-outdated version of Guideline 1B1.13 limits the district court's discretion.")

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. §3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

The Application Notes section of U.S.S.G. Section 1B1.13 goes on to provide several examples of what might constitute "extraordinary and compelling reasons" to justify a sentence reduction. Note 1 reads as follows:

1. Extraordinary and Compelling Reasons. Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is –

(I) suffering from a serious physical or medical condition,

> > (II) suffering from a serious functional or cognitive impairment, or
>
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment whichever is less.
>
> (C) Family Circumstances.
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with the reasons described in subdivisions (A) through (C).

Finally, as directed in subsection (2) above, to determine whether the defendant is a danger to the safety of any other person or to the community, examination of the factors enumerated in 18 U.S.C. § 3142(g) is necessary:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section [18 U.S.C.] 1591, a Federal crime of

11

terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

### **Discussion**

A defendant has the burden of establishing circumstances warranting his release, although he first must establish that he has exhausted his administrative rights to appeal with the Board of Prisons or 30 days have elapsed since submission of a request to the warden of his institution to file a compassionate release motion on his behalf. See, United States v. Ortiz Cabrera,

Crim. A. No. 18-304-01, 2021 WL 411502 at *3 (E.D. Pa. Feb. 5, 2021); United States v. Neal, Crim. A. Nos. 08-0628, 10- 0685, 2020 WL 5993290 at *4 (E.D. Pa. Oct. 9, 2020)(citing United States v. Adeyemi, Crim. A. No. 06-0124, 2020 U.S. Dist. LEXIS 117743 at *45, 2020 WL 3642478 at *16 (E.D. Pa. July 6, 2020)); United States v. Brown, Crim. A. No. 13-176-05, 2020 U.S. Dist. LEXIS 90187 at *3, 2020 WL 2615616, at *1 (E.D. Pa. May 22, 2020). Here, the record does reflect that on July 26, 2020, Maurice Phillips submitted an application to the Warden of the facility where he is being housed, FCI Talladega (Alabama) seeking compassionate release/sentence reduction under Section 3582(c)(1)(A) and that application was denied by Warden Cheron Y. Nash on September 9, 2020. Phillips thereafter appealed that decision but Warden Nash refused it on October 6, 2020. (Doc. 1103, Exhibit "G," at pp. 133-144). Accordingly, we find that Defendant has sufficiently satisfied the administrative pre-requisites to directly filing his motion with this Court and we therefore turn next to an evaluation of whether there here exist extraordinary and compelling reasons to warrant reducing his sentence.

The basis for Defendant's motion for compassionate release is the now-more-than-year-long coronavirus crisis and the dangers which it posed to individuals housed in close quarters such as correctional facilities. Defendant is presently and has

now been housed for the past several years at FCI Talladega in Alabama, a medium security prison with a total population of 942 inmates – 846 of whom are housed in the correctional facility itself and 96 in the minimum security satellite camp.  Since the inception of the coronavirus outbreak, FCI Talladega has had a total of 287 inmates and 54 staff members who contracted the virus.  Four of these inmates but none of the staff died as a result of COVID-19; 283 inmates and 54 members of the staff recovered.  Presently, there are no inmates and no staff who are COVID positive.  To date, 127 staff have been fully inoculated as have 531 inmates.  See, [www.bop.gov/coronavirus](www.bop.gov/coronavirus).  Defendant himself was offered but refused the Pfizer-Bio-N-Tech vaccine on February 2, 2021.  Defendant himself has never tested positive for COVID-19.

At present, the Bureau of Prisons' COVID-19 Modified Operations Plan remains in place.  It provides for, among other interventions, restrictions on outside visitors including temperature and symptom checks, plexiglass barricades and social distancing, implementation of protocols for increased cleaning and hygienic treatment of its facilities, quarantining and testing of all new inmates, regular testing of inmates and staff and treatment of symptomatic inmates.  Inmates are still limited in their movements to avoid gathering in congregate settings and generally only as needed to enable them to take thrice-weekly

14

showers, and to use the laundry, commissary, telephone and computers/law library. Aside from that necessary to obtain medical care, travel between facilities is still limited, official staff travel and training is still postponed and staff continue to be assigned to the same postings in lieu of rotation as much as is practicable. See generally, www.bop.gov/coronavirus/covid19 status.jsp.

Defendant avers that he is 50 years old and suffers from the following medical conditions: hypertension, pre-diabetes, hypercholesterolemia, obesity, glaucoma, nerve damage and chronic arthritis which "elevate both risk of contracting the COVID-19 virus and the likelihood of severe health consequences and death if he does contract the virus." (Def's Time Sensitive Motion for Compassionate [Release], Doc. No. 1103, at p. 7). His prison medical records attached to both his motion and to the Government's response support Defendant's representations.

Recently, the Centers for Disease Control ("CDC") updated the listing of medical conditions in adults which increase the odds of severe disease from COVID-19. This listing now includes: cancer, chronic kidney disease, chronic lung diseases such as chronic obstructive pulmonary disease, moderate to severe asthma, interstitial lung disease, cystic fibrosis and pulmonary hypertension, dementia and other neurological conditions, Type 1 or Type 2 diabetes, down syndrome, heart

15

conditions such as heart failure, coronary artery disease, cardiomyopathies or hypertension, HIV infection, being in an immunocompromised state, liver disease, being overweight or obese,[4] being pregnant, a former smoker, or a solid organ or blood stem cell transplant recipient, having sickle cell disease or thalassemia, having a history of stroke or cerebrovascular disease, or suffering from a substance use disorder. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. People over the age of 65 also are more likely to suffer adverse outcomes from COVID. Id.

Here, Defendant's medical records evince that while he is indeed obese with a BMI of 31.7 and has elevated cholesterol, hypertension and pre-diabetes, his overall health is stable and properly managed with various medications and other, benign interventions.[5] In this district, a number of our colleagues have held that "[o]besity and hypertension, even combined, are

---

[4] Overweight is defined as having a body mass index ("BMI") greater than 25 kg/m but less than 30 kg/m. Obesity is having a BMI greater than 30 kg/m but less than 40 kg/m and severe obesity is defined as having a BMI which is higher than 40 kg/m.
[5] Presently, Defendant takes Hydrochlorothiazide for hypertension, Naproxen 500 for pain relief from his degenerative joint disease/arthritis in his hip and Latanoprost optical drops for the glaucoma. His pre-diabetic condition had long been monitored and managed with a controlled diet, and Defendant recently was started on Atorvastatin. He also has been permitted to have a special pillow, and has been given a cane and orthotic insoles to assist with walking given that his right leg is now shorter than his left as a result of his having two hip surgeries in 2015. His housing status is such that he is housed in a first floor cell and has the lower bunk.

16

routinely insufficient to warrant compassionate release." United States v. Golden, *5 (citing, *inter alia*, United States v. Whiteman, No. 15-CR-0298, 2020 WL 4284619 at *1 (E.D. Pa. July 27, 2020), United States v. Takewell, No. 14-00036, 2020 WL 4043060 at *3 (W.D. La. July 17, 2020) and United States v. Wax, No. 14-251, 2020 WL 3468219 at *2 - 3 (D.N.J. June 25, 2020)). We agree, particularly given that Defendant's health conditions are well-controlled and he has been offered but declined vaccination against COVID-19. Consequently, we cannot find that Defendant's medical conditions are such as present the compelling and extraordinary circumstances required to merit early and compassionate release from his life sentences.

We also do not find that any of the Section 3553(a) or Section 3142(g) factors militate in favor of Defendant's compassionate release nor is Defendant close to the age or years' served thresholds either. To be sure, Defendant is only 50 years old and has just served some 13 years of his multiple life without possibility of release sentences.[6] While this Court is pleased that Defendant has now expressed remorse for his crimes and has availed himself of the educational, service and employment opportunities in the prison system,[7] these positive

---

[6] This computation reflects credit for Defendant's time spent in custody while awaiting trial.
[7] Indeed, the Court is impressed by the many certificates of course completions and letters of reference which Defendant has attached to the within motion and commends Defendant for his personal and spiritual growth.

17

recent developments are nevertheless grossly insufficient to overcome the gravity and severity of Defendant's past criminal actions.  Indeed, the crimes of which Defendant stands convicted were particularly heinous and included two pre-meditated, carefully calculated murders which were committed solely for the purpose of circumventing the authorities from uncovering evidence of his wide-ranging criminal enterprise and to protect that enterprise, a large multi-state cocaine distribution network that had operated for nearly 10 years, from prosecution. The evidence of Defendant's guilt at trial was overwhelming and clearly demonstrated that Defendant himself was at the helm of the PCO and he himself orchestrated and planned the Glanville (and King) murders.  He narrowly escaped being sentenced to death and was instead sentenced to serve several life sentences without the possibility of ever being released.  Thus, in weighing all of these considerations against the potential risks to Defendant's health, we can reach no other conclusion but that his case clearly does not warrant early, compassionate release. The motion shall therefore be denied pursuant to the annexed order.